# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NARBEH KAMARZARI an individual;<br><br>　　　　Plaintiff,<br><br>　v.<br><br>BMW NORTH AMERICA, LLC., a limited liability company; VALENCIA BMW, business form unknown; and DOES 1 through 50 inclusive,<br><br>　　　　Defendants. | CV 18-3778-RSWL-RAO<br><br>**ORDER re: Plaintiff's Motion to Remand** [14] |

Currently before the Court is Plaintiff Narbeh Kamarzari's ("Plaintiff") Motion to Remand [14] ("Motion"). Having reviewed all papers submitted pertaining to this Motion, the Court **NOW FINDS AND RULES AS FOLLOWS:** the Court **GRANTS** Plaintiff's Motion.

1

**I. BACKGROUND**

**A. Factual Background**

Plaintiff Narbeh Kamarzari ("Plaintiff") alleges that Defendant BMW North America, LLC ("Defendant") manufactured and distributed a 2015 BMW X1, Vehicle Identification No. WBAVM1C52FV314717, for sale or lease in the United States. Def.'s Notice of Removal, Ex. A, Compl.¶ 6 ("Compl.") ECF No. 1-1. Plaintiff alleges that on or about February 25, 2015, Plaintiff leased a 2015 BMW X1 (the "Subject Vehicle") from Valencia BMW ("Valencia"),[1] an authorized dealer and agent of Defendant. Id. ¶ 6-7. Under the terms of the lease, Plaintiff was obligated to make payments totaling $17,776.75 over a 36-month term. Keshishian Decl., Ex. B, ECF No. 14-1.

Plaintiff alleges that on three occasions, August 14, 2017, September 4, 2017, and October 31, 2017, Plaintiff returned the Subject Vehicle to one of Defendant's authorized service and repair facilities because it allegedly exhibited "defects, nonconformities, misadjustments, and malfunctions." Compl. ¶ 11. On each occasion, Plaintiff requested repairs under applicable warranties. Id. ¶ 12(b). Plaintiff alleges that each time, the defects were not

---

[1] Plaintiff initially brought this Action against Valencia BMW and Does 1 through 50, but dismissed both Defendant Valencia BMW and the Doe Defendants on April 16, 2018. Keshishian Decl. ¶¶ 8-9, ECF No. 14-1.

cured. Id. ¶ 13. On or about November 13, 2017, Plaintiff demanded Defendant repurchase the vehicle, but Defendant denied Plaintiff's request. Keshishian Decl. ¶ 6. Plaintiff now brings this Action requesting either replacement of the Subject Vehicle or restitution under the Song-Beverly Act.

**B. Procedural Background**

Plaintiff filed his Complaint [1-1] in Superior Court of the State of California, County of Los Angeles, on January 19, 2018 alleging breach of express and implied warranty under Song-Beverly Consumer Warranty Act. Defendant removed this Action to this Court on May 4, 2018 [1]. Plaintiff filed the current Motion to Remand [14] on August 29, 2018. Defendant filed its Opposition [15] on September 11, 2018. Plaintiff did not file a Reply.

## II. DISCUSSION

**A. Legal Standard**

Civil actions may be removed from state court if the federal court has original jurisdiction. See Syngenta Crop Prot., Inc. v. Henson, 537 U.S. 28, 33 (2002) ("Under the plain terms of § 1441(a), in order properly to remove [an] action pursuant to that provision, . . . original subject-matter jurisdiction [must] lie[] in the federal courts."). Diversity jurisdiction exists in all civil actions between citizens of different states where the amount in controversy exceeds $75,000, exclusive of interest and

3

costs. 28 U.S.C. § 1332. There must be complete diversity of citizenship, meaning "each of the plaintiffs must be a citizen of a different state than each of the defendants." Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir. 2001) (citing Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996)). Federal question jurisdiction exists in "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

"The burden of establishing jurisdiction falls on the party invoking the removal statute, which is strictly construed against removal." Sullivan v. First Affiliated Sec., Inc., 813 F.2d 1368, 1371 (9th Cir. 1987) (internal citations omitted). Courts resolve all ambiguities "in favor of remand to state court." Hunter v. Philip Morris USA, 582 F.3d 1039, 1042 (9th Cir. 2009) (citing Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992)). A removed case must be remanded "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c).

**B. Discussion**

Plaintiff contends that this Court lacks subject matter jurisdiction over this Action. The Court undisputably lacks federal question jurisdiction; therefore, the issue is whether the Court has diversity jurisdiction.

1. Complete Diversity

In the Notice of Removal, Defendant alleges that Plaintiff is a citizen of California. Notice of Removal ¶ 12. Defendant is a limited liability company organized in the State of New Jersey, and its sole member, BMW (US) Holding Corp., is organized under the laws of Delaware, with its principal place of business in New Jersey. Id. ¶ 13. Plaintiff does not contest complete diversity and only brings his Motion to Remand on the basis of the amount in controversy requirement. Thus, complete diversity exists.

2. Amount in Controversy

Where, as here, a complaint does not demand a specific sum, "the notice of removal may assert the amount in controversy." 28 U.S.C. § 1446(c)(2)(A); see Kroske v. US Bank Corp., 432 F.3d 976, 980 (9th Cir. 2005) (stating that where "the complaint does not demand a dollar amount, the removing defendant bears the burden of proving by a preponderance of evidence that the amount in controversy exceeds $[75],000" (quoting Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 376 (9th Cir. 1997))). The "notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required . . . only when the plaintiff contests, or the court questions, the defendant's allegation." Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 554 (2014). Where the plaintiff contests the

amount alleged in the notice of removal, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." Id. at 551 (citing 28 U.S.C. § 1446(c)(2)(B)).

Here, Defendant alleges in the Notice of Removal that the total potential damages in this Action is at least $101,673.00. Notice of Removal ¶ 15. Defendant claims this total includes lease payments, excess mileage charges, and the cost to purchase the Subject Vehicle from the lessor, each with a two-time civil penalty, as well as attorney fees and costs claimed by Plaintiff. Plaintiff contests Defendant's allegation that the amount in controversy exceeds $75,000.

        a. *Actual Damages*

Plaintiff seeks to recover for Defendant's violation of an express warranty under the Song-Beverly Act, Cal Civ. Code § 1793.2. Actual damages under Song-Beverly are the "amount equal to the actual price paid or payable by the buyer," less the reduction in value "directly attributable to use by the buyer." Cal. Civ. Code § 1793.2(d)(2)(B)-(C). To determine the amount directly attributable to the buyer's use of the vehicle, the manufacturer multiplies the price of the vehicle the buyer paid or will pay by a fraction—the denominator is 120,000, and the numerator is the number of miles the buyer drove the car before the first relevant repair. Id. This calculation provides the

6

actual damages that Plaintiff suffered.

Plaintiff seeks replacement of the Subject Vehicle or restitution of the amount actually paid or payable under the contract. Compl. ¶ 17(a). The lease for the Subject Vehicle shows that Plaintiff was obligated to make payments totaling $17,776.75[2] over a 36-month lease term. Keshishian Decl. Ex. B, ECF No. 14-1. Defendant argues that the amount paid or payable also includes incidental and consequential damages, and in this case includes excess mileage charges. The lease contains a mileage limitation of 30,000 miles, and as of December 11, 2017, Plaintiff had driven 49,048 miles with two months remaining on the lease. See Villegas Decl. Ex. A, Lease Agreement section 11. Defendant argues that even assuming Plaintiff did not drive the vehicle the last two months of the lease, Plaintiff incurred at least $2,599.40 in excess mileage charges. The Court agrees that the excess mileage charges could be included in the total actual damages. See Cal. Civ.

---

[2] Plaintiff does not use this number and instead starts its calculation from $33,991.00, the gross capitalized cost of the Subject Vehicle is valued at, as shown in the lease agreement. Keshishian Decl. Ex. B. However, limiting recovery to payments actually made "is consistent with the logic and purpose of the Song-Beverly Act to make the consumer whole." Brady v. Mercedes-Benz USA, Inc. 243 F. Supp. 2d 1004, 1008 (N.D. Cal. 2002) (finding other states have interpreted the statute to require restitution only of actual lease payments, and not recovery of the full capitalized purchase price or current value of the lease by the lessee). Thus, the Court should reject $33,991.00 as the starting point.

7

Code § 1793.2(B)(providing restitution includes collateral charges including "rental car costs actually incurred by the buyer"). This brings Plaintiff to a total of $20,376.15 actual damages if he were to prevail.

Defendant argues that the total damages also includes the cost to repurchase the Subject Vehicle from the lessor, $23,573.80, as stated in the lease Villegas Decl. Ex. A, section 12. However, Plaintiff seeks replacement of the Subject Vehicle *or* restitution for the amount actually paid or payable. Compl. ¶ 17(a)(emphasis added). If Plaintiff were to prevail in this Action, Plaintiff would receive one or the other, and not both replacement and restitution. Thus, the Court disagrees with Defendant and will not include both restitution of $20,376.15 and the repurchase price of $23,573.80 in the amount for actual damages. The Court discusses each as its own potential outcome.

If Plaintiff were to prevail in receiving restitution, the total value of $20,376.15 must be reduced by the amount directly attributable to use (as measured by miles driven) by the consumer prior to the first repair (or attempted repair) of the problem as pro-rated against a base of 120,000 miles. Alvarado v. Fca US, LLC, No. EDCV 17-505 JGB (DTBx), 2017 WL 2495495, at *4 (C.D. Cal. June 8, 2017)(citing Cal. Civ. Code § 1793.2(d)(2)(B)). Plaintiff alleges that he delivered the Subject Vehicle to an authorized

8

repair facility for the first time on or about August 14, 2017. Compl. ¶ 11(a). At this time, the vehicle had 47,691 miles. See Keshishian ¶ 12; id. Ex. C. The total mileage deduction would amount to $8,097.99 (fraction of 47,691 miles over 120,000 multiplied by $20,376.15). Thus, actual damages after the reduction amounts to $12,278.16.

Alternatively, if Plaintiff were to prevail in receiving the repurchase price of the vehicle at $23,573.80, this too would be reduced by the total mileage deduction resulting in a total of $15,475.81 in actual damages.

    b. *Civil Penalty*

The amount in controversy for diversity jurisdiction may include punitive damages if recoverable under state law. Brady v. Mercedes-Benz USA, Inc. 243 F. Supp. 2d 1004, 1009 (N.D. Cal. 2002) (citing Davenport v. Mutual Ben. Health & Acc. Ass'n, 325 F.2d 785, 787 (9th Cir. 1963)). Song-Beverly does not provide for punitive damages but "[c]ourts have held that the civil penalty under [Song-Beverly] is akin to punitive damages, because both have the dual effect of punishment and deterrence for defendants." Id. (citations omitted). Moreover, "courts have held in other contexts that treble damages authorized by state law may be included in determining the amount in controversy" and Song-Beverly "in effect authorizes treble damages." Id. (citations omitted). Therefore,

the Court can include Song-Beverly's civil penalty damages in the amount in controversy calculation.

The amount recoverable under the Song-Beverly Act is up to two times the amount of actual damages Plaintiff suffered. Brady, 243 F. Supp. at 1009. Defendant argues the amount in controversy is at least $84,702.25 when including the two-time civil penalty. However, Defendant reaches that conclusion by applying the civil penalty each to the lease payments ($17,776.75 x 2) and to the excess mileage charges ($2,559.50 x 2), plus the purchase price of the vehicle ($23,573.80). This is an incorrect application of the civil penalty. First, as mentioned above, the purchase price and the lease payments are not both considered together. Second, the civil penalty applies once to the total actual damages, and not individually to each. See Alvarado, 2017 WL 2495495, at *4 (applying civil penalty once to total actual damages including payments made, a DMV filing fee, and sales tax).

Thus, the Court applies the civil penalty once to the total actual damages calculated above. First, if Plaintiff prevails in receiving restitution in the amount of $12,278.16, adding the civil penalty results in a total of $24,556.32. Alternatively, if Plaintiff were to prevail in receiving the repurchase price of the vehicle in the amount of $15,475.81, adding the civil penalty results in a total of $30,951.62.

Neither amount is close to reaching the $75,000 minimum.

///

c. *Attorneys' Fees*

Future attorneys' fees are to be included when determining the amount in controversy. Fritsch v. Swift Transportation Co. of Arizona, LLC, 899 F.3d 785 (9th Cir. 2018). The Fritsch court, however, also noted that a "district court may reject the defendant's attempts to include future attorneys' fees in the amount in controversy if the defendant fails to satisfy this burden of proof." Id. at 795. Defendant offered its calculation of the amount of controversy and merely mentioned it was "without taking into consideration attorney fees." Defendant provided no estimate of attorney fees likely to be expended, hourly rates, or evidence of attorneys' fees in similar cases. This is insufficient to include attorneys' fees in the amount of controversy. See John Wallace Eberle v. Jaguar Land Rover North America, LLC, No. 2:18-cv-06650-VAP-PLA, 2018 WL 4674598, *3 (C.D. Cal. Sept. 26, 2018) (finding defendant's claim that it is unaware of plaintiff's hourly rate but anticipates the fees to be in excess of the "less than $5,000" amount insufficient); Conrad Assocs. v. Hartford Accident & Indemnity Co., 994 F. Supp. 1196, 1200 (N.D. Cal. 1998) (finding that a defendant failed to establish the amount in controversy when including attorneys' fees without estimating "the

amount of time each major task will take," or varying the hourly billing rate for each task). Because any attorneys' fees that could be awarded is speculative, the Court does not include attorneys' fees in its amount in controversy calculation.

In sum, the Court finds that if Plaintiff were to prevail, Plaintiff could receive at most a total amount of damages of $30,951.62. Consequently, Defendant has not demonstrated by a preponderance of the evidence that the amount of controversy meets the minimum requirement of $75,000.

### III. CONCLUSION

Based on the foregoing, the Court **GRANTS** Plaintiff's Motion to Remand. The Clerk shall remand this action to the Los Angeles County Superior Court, Case No. BC690863.

**IT IS SO ORDERED.**

DATED: November 8, 2018

s/ RONALD S.W. LEW
**HONORABLE RONALD S.W. LEW**
Senior U.S. District Judge